UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No.12-80218-CR-MARRA

UNITED STATES OF AMERICA

vs.

DYLAN HARRISON,

        Defendant.

_____/

**GOVERNMENT'S RESPONSE TO DEFENDANT'S
SENTENCING MEMORANDUM**

The United States of America, by and through undersigned counsel, responds to defendant Dylan Harrison's Sentencing Memorandum and states as follows:

The United States does not dispute that the defendant, Dylan Harrison should receive recognition and credit for his early cooperation, his voluntarily identifying and assisting the government in seizing assets, and his agreement to assist the government in the prosecution of others. However, the United States wishes to respond to some of the assertions set forth in defendant's memorandum.

    I. **The Offense**

The defendant entered a plea of guilty to conspiracy  a) to manufacture and distribute a controlled substance analogue, in violation of Title 21, United States Code, Sections 813 and 841(a)(1); b) to knowingly conduct and attempt to conduct financial transactions which involved the proceeds of specified unlawful activity, that is, violations of Title 21, United States Code, Section 841(a)(1), in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i); and c) to introduce

and cause the introduction into interstate commerce of misbranded drugs, with the intent to defraud and mislead, in violation of Title 21, United States Code, Sections 331(a), 352(a) and 333(a)(2); all in violation of Title 18, United States Code, Section 371.   The gist of the offense is that, for several years, the defendant and his partner, John Shealey, engaged in the manufacturing and distribution of synthetic cannabinoids (designed to imitate the effects of marijuana).  The product, created from plant material and chemicals imported from abroad,  was packaged under the brand name "Mr. Nice Guy," and was labeled as "herbal incense" or "potpouri" and contained the warning that it was "not for human consumption."   Of course the defendant well knew that the only purpose of the product was for human consumption, as the effects of the drug can only be felt through ingesting or smoking it.   Over the course of a couple of years, the defendant distributed millions of dollars worth of product to retail establishments such as smoke shops, head shops, gas stations, etc. and also sold the product directly to consumers over the internet.   It goes without saying that it was a very lucrative business.  Further the defendant knew this was a controversial business.  Newspaper articles cited the dangers of designer drugs.  People were getting arrested, including one of the defendant's wholesalers.  Yet the defendant allowed the business to continue.

In order to deal with the problem of "designer drugs," the U.S. Congress enacted, in 1986, the Controlled Substance Analogue Enforcement Act (Title 21, United States Code Section 813). This law provides that controlled substance analogues are to be treated as Schedule I controlled substances for the purposes of criminal prosecution.  The term "controlled substance analogue" is defined as a substance which: (1) the chemical structure of which is substantially similar to the chemical structure of a controlled substance in schedule I or II;  (2) which has a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or

2

greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II; or (3) with respect to a particular person, which such person represents or intends to have a stimulant, depressant, or hallucinogenic effect on the central nervous system that is substantially similar to or greater than the stimulant, depressant, or hallucinogenic effect on the central nervous system of a controlled substance in schedule I or II (Title 21 United States Code 802(32)(A).

Despite this law, many individuals have attempted to create designer drugs that get around the law, or at least law enforcement. Synthetic cannabinoids grew up as a cottage industry first in Europe and then in the United States, after a research scientist at the Clemson University, John W. Huffman, was able to synthesize chemical substances that mimicked the effects of marijuana. One of the main chemical combinations, named JWH-018, became the main component in the creation of "designer marijuana." In March 2011, DEA placed JWH-018 on a temporary banned list and it was subsequently designated as a Schedule I controlled substance. Of course the manufacturers of synthetic cannabinoids, including this defendant, immediately turned to other chemical substances which would have the same effect. One of those substances was a chemical composition called AM-2201. The defendant utilized this product until it was outlawed in Florida, in March 2012. (AM-2201 was later classified as a Schedule I controlled substance by Congress). The defendant then turned to a new product, UR-144, which he used until his arrest in late July 2012. Even before these products were banned federally, however, various states were enacting laws attempting to deal with the scourge of these illicit substances.

Although it may be true, as defendant contends, that he would discard unsold substances once they became listed as banned substances, he nevertheless was acting in ignorance - or disregard - of

federal law. For while the defendant may have thought that he was doing a good thing by throwing out his AM-2201 product after March 2012, what he failed to understand was that AM-2201 was an analogue of JWH-018. Therefore, his manufacturing and distributing of AM-2201 during the year before it was banned in Florida was always a violation of Title 21 United States Code, Section 813.

Defendant cites as a mitigating factor the lack of clarity surrounding the legal status of the substance UR-144. The government submits that, had the case gone to trial regarding UR-144, the question of whether UR-144 was an analogue of JWH-018 would have been a question of fact for a jury. However the issue is moot, as the government agreed in its plea agreement to limit defendant's conduct to the distribution of AM-2201. This has resulted in a significant benefit to the defendant under the Sentencing Guidelines, as many hundreds of kilograms of product containing UR-144 was seized during a search warrant executed at the Mr. Nice Guy warehouse.

The defendant also notes that a cottage industry of lawyers has sprung up willing to defend manufacturers and distributors of synthetic cannabinoids. Some lawyers have offered opinions that no violation of law is occurring when a particular product does not contain one of the listed banned substances. In the opinion of the undersigned, any lawyers who are condoning the conduct engaged in by this defendant would be committing malpractice at the very least because they are 1) ignoring the federal analogue statute and 2) ignoring the federal misbranding statute (21 USC 331(a), 352(a) and 333(a)(2). It is quite disingenuous for a lawyer to opine that "because the product is not intended for human consumption" it is not illegal, when the lawyer knows full well that this is the only purpose for the synthetic drug and that the product is clearly being misbranded.

However, since the defendant does not actually contend that he relied on the advise of legal

4

counsel in engaging in the illegal conduct, this issue is irrelevant. Had the defendant offered a defense based upon advise of counsel, he would have exposed himself to evidence possibly showing that he received contrary advise from lawyers- that is, telling him that he should not engage in the conduct.  Rather, with the advise of his current good and competent attorneys, he decided to forego any defense based on legal advice.

Finally, while some of the defendant's conduct was consistent with the operation of a lawful business, other conduct was consistent with the knowing operation of an illegal enterprise.  The defendant knew that he could well be convicted of the charges in the original indictment and made a well informed decision to enter a plea of guilty to superseding Information.  By doing so he greatly limited his exposure under the sentencing guidelines.   This plea bargain came about because he agreed to give up substantial assets and to cooperate with the government.  The United States requests that the defendant be sentenced based upon the guideline sentencing range as calculated by the US Probation office, albeit with a moderate reduction in recognition of defendant's early cooperation.

          Respectfully submitted,

          WIFREDO A. FERRER
          UNITED STATES ATTORNEY

By:   */s/ Roger H. Stefin*
      Roger H Stefin
      Assistant United States Attorney
      Florida Bar No. 0287334
      500 S. Australian Avenue, Suite 700
      West Palm Beach, Florida 33401
      Tel: (561) 209-1055
      Fax: (561) 820-8777
      E-Mail: roger.stefin@usdoj.gov

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed by electronic filing (ECF) this 11 day of August 2013.

/s/ Roger H. Stefin
Roger H. Stefin
Assistant United States Attorney